UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEURYS SOSA,

                              Plaintiff,

              – against –

DENNIS BUSTOS, RICHARD
BROWN, ROBERT STRELL, JOHN
SPROULE, WILLIAM GEIMANO,
SEAN BREW, FRANK HERNANDEZ,
FRANK FELICIANO, FERNANDO
GUIMARAES, NELSON PABON,
WILLIAM LOGAN, and CITY OF
NEW YORK,

                              Defendants.

**OPINION & ORDER**

17 Civ. 417 (ER)

RAMOS, D.J.:

        Geurys Sosa brings this complaint alleging violations of his civil and

constitutional rights pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against Dennis Bustos and

Richard Brown, employees of Immigration and Customs Enforcement and Removal

Operations ("ICE"); Robert Strell and John Sproule, employees of the Drug Enforcement

Administration ("DEA"); and William Geimano, Sean Brew, and Frank Hernandez,

employees of Homeland Security Investigations (collectively, the "Federal Defendants");

as well as against New York Police Department ("NYPD") officers, Frank Feliciano,

Fernando Guimaraes, Nelson Pabon, and William Logan (collectively, the "Individual

City Defendants"), and the City of New York (the "City") (together, the "City

Defendants").  Doc. 31.

        Before the Court are three motions:  (1) the Federal Defendants' motion to

dismiss, Doc. 86; (2) the City Defendants' motion to dismiss, Doc. 88; and (3) Sosa's

motion for U Visa certification, Doc. 74.  For the reasons stated below, the Federal and

City Defendants' motions are GRANTED.  Because no claims remain, the Court need not reach Sosa's motion for U Visa certification.

## I.  BACKGROUND

### A.  Factual Background

Sosa alleges that on January 27, 2016, at approximately 4:00 PM, federal agents and members of the NYPD entered his residence pursuant to a search warrant.[1]  Doc. 31 ¶ 1.  One of the individuals approached him and, without cause, struck him repeatedly on the head with a firearm.  *Id.*  Sosa lost consciousness and fell to the floor.  According to disclosures provided by the United States Attorney's Office (the "U.S. Attorney's Office") and the City of New York Law Department (the "Law Department"), the individual defendants were the only law enforcement officers "that entered [his] residence and/or were present in [his] apartment building at the time [he] was repeatedly struck in the head with a firearm."  *Id.* ¶ 2.  As a result of being struck on the head, Sosa suffered a fractured skull and other serious physical and emotional injuries.  *E.g.*, *id.* ¶ 27.

Sosa was arrested as a result of the search; however, the record is silent as to the details of that arrest, including as to whether it was conducted pursuant to a valid arrest warrant or whether it was the result of the officers' search of the apartment.

### B.  Procedural History

On April 21, 2016, before he commenced this action, Sosa served the City with a Notice of Claim relating to this incident, and he was examined by the City in connection with this Notice of Claim on July 15, 2016.  *Id.* ¶¶ 19–21.

Sosa originally filed this case, *pro se* and *in forma pauperis*, on January 19, 2017, against three John Does at ICE, the DEA, and the Federal Bureau of Investigation ("FBI"), as well as against the United States Department of Justice ("DOJ") alleging that his civil rights were violated "when a law enforcement agent hit me on the head with his gun."  Doc. 2 at 2.  He stated that some of the officers were wearing uniforms that said

---

[1] The record is silent as to the basis for the warrant.

"ICE" and "POLICE," and that others were in plainclothes.  *Id.* at 3.  On February 15, 2017, the Court issued an Order dismissing claims against DOJ, interpreting Sosa's claims as against both federal law enforcement officers and NYPD (in part because some of the officers' uniforms allegedly said "POLICE"), and directing the Law Department and the U.S. Attorney's Office to ascertain the identities of the John Doe Defendants and their addresses and to provide this information to Sosa, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (the "*Valentin* Order").  Doc. 5.  The Court instructed Sosa to file an amended complaint naming the John Doe Defendants within thirty days of receiving this information.  *Id.* at 5.

The Law Department requested that Sosa provide more information regarding the John Doe officers, as well as an extension of time to respond to the *Valentin* Order.  Doc. 7.  The Court granted this request.  A second request for an extension of time, requested in part because Sosa had failed to provide the releases necessary to investigate his claim, was also granted.  Doc. 11.  On August 2, 2017, the Law Department requested to be excused from the *Valentin* Order, Doc. 12, but the application was denied, Doc. 13.  The docket then went silent for nearly two years.

On April 9, 2019, the Court directed the parties to provide a status update.  Doc. 14.  At that point, the City Defendants represented that they had complied with the Court's *Valentin* Order to the best of their ability, but had not heard from Sosa, including about whether his address had changed.  Doc. 16.  Sosa represented that he had not received any information to assist him in identifying the John Doe officers.  Doc. 15.  He also stated that, on October 31, 2018, he had sent a letter to the U.S. Attorney's Office requesting that they comply with the *Valentin* Order.  *Id.*  The U.S. Attorney's Office, in turn, wrote the Court that it had only just learned about the case against it and requested an extension of time to identify the federal officers allegedly involved.  Doc. 18.  It provided this information on May 28, 2019.  Doc. 23.  In the course of its investigation, the U.S. Attorney's Office also identified other NYPD officers who may have been

involved and disclosed these to the Law Department, which supplemented its disclosures on June 11, 2019.  Doc. 28.  Approximately three-and-a-half years after the incident, on June 24, 2019, having secured counsel, Sosa submitted an Amended Complaint naming these officers, as well as the City of New York, as defendants.  Doc. 31.  In the Amended Complaint, Sosa brings claims pursuant to *Bivens* and § 1983, alleging that Defendants violated his Fourth Amendment right to be free from unreasonable seizure; as well as state law claims against the City Defendants for assault and battery.

On October 14, 2019, Sosa petitioned this Court for U Visa certification.  Doc. 74. The Federal Defendants moved to dismiss the Amended Complaint as against them pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 20, 2020, Doc. 86, and the City Defendants moved for the same on January 21, 2020, Doc. 88.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support

it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).  Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely." (internal quotation marks and citation omitted)).

## III.   DISCUSSION

Before the Court are two motions filed by the Federal and City Defendants to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, both motions are GRANTED.

### A.  The Federal Defendants' Motion to Dismiss

The Federal Defendants move to dismiss the *Bivens* claims against them, arguing that Sosa's claims present a new *Bivens* context, and that special factors counsel against expanding *Bivens* to this context.  Sosa, in turn, argues that this case falls squarely within *Bivens*.  The Court agrees with the Federal Defendants.

In *Bivens*, the Supreme Court recognized an implied damages action "to compensate persons injured by federal officers who violated the [Fourth Amendment's] prohibition against unreasonable search and seizures."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).  However, the Court has since become increasingly cautious before finding new implied causes of action, *id.* at 1855–57, clarifying that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).  The Supreme Court has therefore set forth a two-step inquiry for determining whether a *Bivens* remedy is available.  First, courts must consider "whether a case presents a new *Bivens* context."  *Id.* at 1859.  The Court has previously recognized a *Bivens* remedy in only three situations:  (1) in *Bivens* itself, the Court recognized a Fourth Amendment claim "against FBI agents for handcuffing a man in his own home without a

warrant," *id.* at 1860; in *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized a Fifth Amendment challenge "against a Congressman for firing his female secretary," *Abbasi*, 137 S. Ct. at 1860.; and in *Carlson v. Green*, 446 U.S. 14 (1980), the Court recognized an Eighth Amendment claim "against prison officials for failure to treat an inmate's asthma," *Abbasi*, 137 S. Ct. at 1860. If the case at hand differs "in a meaningful way from previous *Bivens* cases . . . then the context is new. *Id.* at 1859. A non-exhaustive list of factors to consider includes:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. If the case presents a new *Bivens* context, the Court must next consider whether there are "special factors counselling hesitation." *Id.* at 1857 (internal quotation marks and citation omitted). This inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858.

The Federal Defendants argue that this case differs from *Bivens*, the only potentially analogous case, primarily because "the right to be free of unreasonable warrantless search and detention (*Bivens*) is distinct from the right to be free of excessive force in the context of an otherwise lawful arrest carried out in the course of executing a lawful search pursuant to a warrant." Doc. 87 at 4. They further argue that the "legal mandate" of the officers in this case differs from that of the officers in *Bivens* because, here, "the Federal Defendants . . . carried out their search pursuant to a valid warrant supported by probable cause and signed by a judicial authority, and did not implicate Plaintiff's privacy rights in the same manner as discussed in *Bivens*." *Id.* at 5. Moreover,

they argue that Sosa at no time alleges that the Federal Defendants lacked probable cause to arrest him.  *Id.*

As an initial matter, Sosa disputes the Federal Defendants' characterization of the Amended Complaint.  He argues that "[i]n the present case, like in *Bivens*, the officers did not possess an arrest warrant, and . . . that at the moment he was unlawfully seized inside his home, there was no probable cause to arrest him."  Doc. 94 at 5.  Sosa admits that at no time "did [he] formally allege" that the Federal Defendants lacked probable cause to arrest him; however, he argues that his complaint should be read to suggest just this by virtue of the fact that it alleges that he was "unreasonably seized in violation of the Fourth Amendment," and that he was arrested before a search (which could have led to probable cause) had been conducted.  *Id.* at 5 n.1.  Nowhere in Sosa's counseled, Amended Complaint, however, is there an iota of a suggestion that the Federal Defendants lacked a valid warrant for his arrest or that they did not have probable cause to arrest him.  "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).  Sosa's amended complaint can only be properly read to bring claims for excessive force, not for warrantless arrest, against the Federal Defendants.  As such, these are the claims the Court will consider.

Courts in this Circuit—and indeed, in this District—are split as to whether excessive force claims present a new context under *Bivens*, and the Second Circuit has yet to weigh in on the question.  Some courts—like those in *Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) and *Rivera v. Samilo*, 370 F. Supp. 3d 362 (E.D.N.Y. 2019)—have found that the right at issue in *Bivens* was primarily a privacy right, not a right to be free of excessive force.  As such, they have found that excessive force claims present a new *Bivens* context.  Other courts, however, have held that *Bivens* also involved a claim "that unreasonable force was employed in making the arrest," and that the plaintiff was entitled to recover for "any injuries . . . suffered as a

result of the agents' violation of the [Fourth] Amendment." *Bivens*, 403 U.S. at 389, 397; *see Lehal v. Cent. Falls Det. Facility Corp.*, 13 Civ. 3923 (DF), 2019 WL 1447261, at *10–12 (S.D.N.Y. Mar. 15, 2019); *Bueno Diaz v. Mercurio*, 19 Civ. 1319 (AT), 2020 WL 1082482, at *2–5 (S.D.N.Y. Mar. 5, 2020). Though the plaintiff in *Bivens* did, indeed, bring claims for excessive forms, that case, by its own terms, concerned "primarily rights of privacy." *Bivens*, 403 U.S. at 390; *see also Martinez*, 2019 WL 6895436, at *7. There is no such constitutional right to privacy at issue here. Given the Supreme Court's guidance that *Bivens* must be read narrowly, *see, e.g.*, *Abbasi*, 137 S. Ct. at 1856–57, the Court therefore finds that Sosa's claims concern a different constitutional right than the one at issue in *Bivens*.

Moreover, the law enforcement officers in this case were acting pursuant to a different legal mandate. In *Bivens*, the officers lacked both a warrant and probable cause to arrest the plaintiff. This lack of a warrant effectively gave rise to the plaintiff's Fourth Amendment claim. Indeed, subsequent cases have described the claim in *Bivens* as "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbasi*, 137 S. Ct. at 1860. Here, as discussed above, Sosa not only concedes that the officers had a valid warrant to enter his home, but makes absolutely no allegations that he was ultimately arrested without either a warrant or probable cause. The Court therefore finds that the officers' legal mandate in this case also differs from that of the officers in *Bivens. See also Rivera*, 370 F. Supp. 3d at 369 ("Plaintiff's arrest was made upon probable cause after a valid vehicle search conducted with probable cause. The officers in *Bivens* arrested the plaintiff in his home without a warrant and without probable cause.").

As currently alleged in Sosa's complaint, his claims involve both a different constitutional right and a different legal mandate than in *Bivens*, and therefore present a new *Bivens* context.

Having found that the case presents a new context, the Court must next consider whether there are "special factors counseling hesitation" in recognizing a new *Bivens*

remedy.  *Abbasi*, 137 S. Ct. at 1857.  The Federal Defendants argue that the availability of the Federal Tort Claims Act ("FTCA") as a potential remedy for Sosa's claims presents one such "special factor."  Sosa does not dispute this in his opposition.  The FTCA was once considered "parallel" and "complementary" to a *Bivens* remedy.  *Carlson*, 446 U.S. at 19–20.  However, that is no longer the case.  As the Court in *Abbasi* observed, "when alternative methods of relief are available, a *Bivens* remedy usually is not."  *Abbasi*, 137 S. Ct. at 1863.  The Supreme Court has further held that alternative remedies "need not be perfectly congruent" to preclude a *Bivens* remedy.  *Minneci v. Pollard*, 565 U.S. 118, 129 (2012).  Courts in this District have therefore found that, post-*Abbasi*, "the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy."  *Abdoulaye v. Cimaglia*, No. 15 Civ. 4921 (PKC), 2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018); *see also Rivera*, 370 F. Supp. 3d at 370; *Morgan v. Shivers*, No. 14 Civ. 7921 (GHW), 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018).  The Court agrees, and declines to find a *Bivens* remedy in this new context.[2]

The Court therefore GRANTS the Federal Defendants' motion to dismiss the claims against them pursuant to Rule 12(b)(6).

### B.  The City Defendants' Motion to Dismiss

City Defendants argue that the claims against them should be dismissed for two reasons:  (1) because they fail to relate back to the Original Complaint and are therefore time-barred and (2) because the state law claims against them are procedurally barred.

#### 1.  The Relation-Back Doctrine

Under Federal Rule of Civil Procedure 15, an amendment relates back to the date of the original pleading if it asserts a claim that "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P.

---

[2] The fact that Sosa's remedy under the FTCA is currently time-barred is inapposite.  *See Rivera*, 370 F. Supp. 3d at 370 ("The present unavailability of an FTCA claim is immaterial to the analysis of whether the existence of an adequate alternative process counsels in favor of judicial restraint." (citations omitted)).

15(c)(1)(B). When the amendment adds new defendants, it will relate back only if the new parties "received such notice of the action that [they] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." *Id.* 15(c)(1)(C). However, "[c]ourts must examine the 'controlling *body* of limitations law,' and apply state law if it provides 'a more forgiving principle of relation back than the one provided' by Rule 15(c)." *Strada v. City of New York*, No. 11 Civ. 5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (quoting *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)). Because New York law provides more forgiving principles of relation back, *see, e.g.*, *Hogan*, 738 F.3d 509, the Court will examine whether the proposed claims would be made timely through the application of New York law.

City Defendants maintain that, under the relevant statute of limitations, the claims against them expired by the time Sosa filed his Amended Complaint.[3] Sosa does not dispute this, but instead argues that the claims against the Individual City Defendants relate back to the Original Complaint pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 1024, and that his claims against the City relate back pursuant to C.P.L.R. § 203. The Court considers each of these arguments in turn.

*a. C.P.L.R. § 1024*

C.P.L.R. § 1024 requires that plaintiffs making claims against John Doe defendants meet two requirements: (1) the "party must exercise due diligence . . . to

---

[3] Sosa brings claims against the City Defendants under both 42 U.S.C. § 1983 and New York state law. For Section 1983 claims, courts in this Circuit "apply the statute of limitations for personal injury actions under state law." *Hogan*, 738 F.3d at 517. In New York, the statute of limitations for a § 1983 claim is therefore three years. *Id.* These claims accrue "'when the plaintiff kn[ew] or ha[d] reason to know of the injury.'" *Allen v. Antal*, No. 665 F. App'x 9, 12 (2d Cir. 2016) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). State law claims against the City and its employees must be brought within one year and ninety days. *See* N.Y. Gen. Municipal L. § 50-i. "[A]n assault and battery claim accrues on the date of the assault or battery." *Quiles v. City of N.Y.*, No. 01 Civ. 10934 (LTS) (THK), 2003 WL 21961008**,** at *6 (S.D.N.Y. Aug. 13, 2003). Sosa alleges that he was struck on the head by a law enforcement officer on January 27, 2016. Doc. 31 ¶ 1. Accordingly, Sosa's § 1983 claims expired on January 27, 2019, and his state law claims expired on April 27, 2017, both long before Sosa filed his Amended Complaint.

identify the defendant by name," and (2) the party must "describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan*, 738 F.3d at 519 (internal quotation marks and citations omitted) (collecting cases); *see also* N.Y. C.P.L.R. § 1024 (McKinney). Generally, a complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). But a plaintiff "'who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party,' may proceed against that party by designating a fictitious name (a 'John Doe') until they become aware of that party's identity." *Barrett v. City of Newburgh*, 720 F. App'x 29, 32 (2d Cir. 2017) (citing N.Y. C.P.L.R. § 1024 (McKinney)).

Courts generally give *pro se* plaintiffs a reasonable "opportunity for discovery to learn the identities of responsible officials." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998). The general principal that "a tort victim who cannot identify the tortfeasor cannot bring suit," is "relaxed" for *pro se* litigants and trial courts are encouraged "to assist a *pro se* plaintiff in identifying a defendant." *Valentin*, 121 F.3d at 75. However, even *pro se* litigants have a responsibility to exercise due diligence in identifying potential John Does. Due diligence "requires that a plaintiff 'show that he or she made timely efforts to identify the correct part[ies] before the statute of limitations expired." *Strada*, 2014 WL 3490306, at *5 (internal quotation marks and citations omitted). "A plaintiff exercising due diligence will take concrete and timely steps to ascertain an officer defendants' identity, for example by submitting multiple discovery demands, requests under state or federal Freedom of Information laws, or requests to the Attorney General's office." *Barrett*, 720 F. App'x at 33. "Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided

in CPLR § 1024." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) (collecting cases).

Here, Sosa claims that he acted diligently because he timely filed a Notice of Claim against the City and described the Individual City Defendants at the resulting 50-h hearing. He also maintains that he provided further assistance to the Law Department when it requested more information about the individuals involved, and that he wrote to the U.S. Attorney's Office on October 31, 2018 requesting that they respond to the Court's *Valentin* Order, notifying them that he was no longer incarcerated, and providing his new address. Sosa further claims that the *Valentin* Order did not require him to amend his complaint until he had heard back from both the City and the Federal Defendants. Doc. 93 at 7–8. Notwithstanding that many of these facts are outside of the Amended Complaint, none of them excuse the fact that Sosa went silent on the docket for nearly two years. At no point did he write the Court to advise it of the difficulty he was having obtaining responses to the *Valentin* Order, or to provide his new address. Moreover, his letter to the U.S. Attorney's Office is irrelevant to Sosa's course of action in obtaining information about the *City* Defendants.

As such, Sosa cannot meet the due diligence requirements of C.P.L.R. § 1024, and his claims against the Individual City Defendants must be dismissed as time barred.

### b. *C.P.L.R. § 203*

Sosa next argues that his claims against the City—asserted for the first time in the Amended Complaint—are proper and within the statute of limitations because he has met the requirements of C.P.L.R. § 203. In New York, claims against one defendant may relate back to claims asserted against another if:

> (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (3) the new party knew or should have known that, but for a[ ] . . . mistake by plaintiff as to

the identity of the proper parties, the action would have been brought
against him as well.

*DaCosta v. City of New York*, 296 F. Supp. 3d 569, 585 (E.D.N.Y. 2017) (internal

quotation marks and citation omitted).  The primary consideration is "whether the

*defendant* could have reasonably concluded that the failure to sue within the limitations

period meant that there was no intent to sue that person at all and that the matter had been

laid to rest as far as [it was] concerned."  *Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995)

(internal quotation marks and citation omitted).

The City does not dispute that the claims arose out of the same occurrence, or that

it is united in interest with the Individual City Defendants.  The key question, then, is

whether the omission of the City in the Original Complaint was a mistake.  "Most federal

district courts have held that the term 'mistake' in CPLR 203 should be given the same

meaning as the term is given in Rule 15(c)(1)(C) of the Federal Rules of Civil

Procedure."  *DaCosta*, 296 F. Supp. 3d at 587.  In explaining what constitutes a

"mistake" for purposes of Rule 15(c), the Supreme Court has held:

> That a plaintiff knows of a party's existence does not preclude [him]
> from making a mistake with respect to that party's identity.  A plain-
> tiff may know that a prospective defendant—call him party A—ex-
> ists, while erroneously believing him to have the status of party B.
> Similarly, a plaintiff may know generally what party A does while
> misunderstanding the roles that party A and party B played in the
> "conduct, transaction, or occurrence" giving rise to [his] claim.  If
> the plaintiff sues party B instead of party A under these circum-
> stances, she has made a "mistake concerning the proper party's iden-
> tity" notwithstanding her knowledge of the existence of both parties.
> The only question under Rule 15(c)(1)(C)(ii), then, is whether party
> A knew or should have known that, absent some mistake, the action
> would have been brought against him.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010).  In other words, "a plaintiff

might know that the prospective defendant exists but nonetheless harbor a

misunderstanding about his status or role in the events giving rise to the claim at issue,

and [he] may mistakenly choose to sue a different defendant based on that

misimpression." *Id.* "That kind of deliberate but mistaken choice," however, "does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Id.*

The City does not argue that Sosa omitted it from his Original Complaint to gain some kind of "tactical advantage," or that he otherwise acted in bad faith. *See, e.g.*, *Buran*, 87 N.Y.2d at 181. Instead, the City argues that Sosa's mistake is not the type contemplated by the relation-back doctrine because it has nothing to do with a lack of knowledge as to the City's "conduct or liability." Doc. 99 at 9. It further argues that it did not have notice of the action because "[t]here is nothing within the four corners of the original complaint to indicate that the City should have known it was to be a party. There is no description of the City or its agents, including applicable allegations, to alert it of this fact." *Id.* at 9–10.

The Court disagrees with this statement, but only as it relates to the City's agents, that is, to the Individual City Defendants. The Court's previous *Valentin* Order clearly interpreted Sosa's claims as against NYPD officers. Doc. 5 at 4–5. It did not, however, interpret Sosa's claims as against the City. Nor is there anything in Sosa's Original Complaint that would have suggested such liability. For example, Sosa did not mention that the John Doe officers acted pursuant to a City policy or practice. As such, Sosa's failure to add the City as a party was not so much a mistake as it was a pure omission. This is not such a case where a prospective defendant "understood, or . . . should have understood, that [it] escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about [its] identity." *Id.* at 550. "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Id.*

The Court therefore finds that the claims asserted against the City do not relate back to the Original Complaint, and that, therefore, these are also barred by the statute of limitations.

*2. State Law Claims*

The City Defendants initially argue that the state law claims must be dismissed against them because Sosa failed to file a Notice of Claim within the applicable time period.  In opposition, Sosa maintains that he did file such a Notice of Claim, and this fact is alleged in his Amended Complaint.  Regardless of whether or not a Notice of Claim was filed, however, Sosa still had an obligation to bring any state law claims against the City Defendants within the applicable statute of limitations, in this case, within one year and ninety days.  *See Sanders v. City of New York*, No. 12 Civ. 113 (PKC) (LB), 2015 WL 1469514, at *20 (E.D.N.Y. Jan. 7, 2015).  Sosa failed to do so.  As such, all state law claims must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Federal and City Defendants' Motions to Dismiss.  As no claims remain, the Court does not reach Sosa's Motion for U Visa certification.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 74, 86, and 88, and to close the case.

SO ORDERED.

Dated:   April 22, 2020
         New York, New York

_____
     EDGARDO RAMOS, U.S.D.J.